Walter R. Hart, J.
In this action brought pursuant to section 167 of the Insurance Law, plaintiff, a pedestrian in whose favor there is an unsatisfied judgment obtained against the owner of a motor vehicle which struck and injured him, seeks to recover a judgment, to the extent of coverage from the carrier which had prior to the occurrence Insured the tort-feasor.
The facts adduced at the trial are not disputed. On May 30, 1961 plaintiff was injured when he was struck by a car owned and operated by one Clifton Weathesgy.
The defense to the present action is predicated on the circumstance that on March 29, 1961 defendant, by registered mail, sent a notice of cancellation to the assured effective April 11, 1961 at 12:01 a.m. for nonpayment of premium.
It is plaintiff’s contention that the notice of cancellation was ineffective for two reasons:
(1) that 13 days ’ notice should have been given by mail instead of 12 days and one minute of the 13th day;
(2) that said notice of cancellation was not filed with the Commissioner of Motor Vehicles within 30 days of the effective date of the purported cancellation.
Plaintiff’s contentions are based on an invalid premise since he erroneously relies on a statute which is inapplicable to the facts. This is evidenced by his citation of the cases of Johnson v. General Mut. Ins. Co., (26 A D 2d 602); Cannon v. Merchants Mut. Ins. Co. (35 Misc 2d 625) and Rotsettis v. Nationwide Mut. Ins. Co., (58 Misc 2d 667). (See, also, Todd v. National Grange Mut. Ins. Co., N. Y. L. J., Nov. 14, 1968, p. 17, col. 5, decided by this court.) These cases are bottomed on section 576 of the Banking Law which provides that “ When a premium finance agreement contains a power of attorney * * * enabling the premium finance agency to cancel any insurance contract * * * the insurance contract * * * shall not be cancelled unless such cancellation is effectuated in accordance with the following provisions ”. (Emphasis supplied.) Paragraph (a) of subdivision 1 requires that 10 days’ written notice be given to the assured by the premium finance agency; paragraph (b) explicitly states that if served by mail “ at least three days for mailing such notice is added to the ten day *700 notice period.” Paragraph (g) provides that upon cancellation of a motor vehicle liability policy notice of such cancellation shall be filed by the insurer with the Commissioner of Motor Vehicles not later than 30 days following the effective date thereof. It is apparent from a reading of the statute that unless there is strict compliance with its provisions the policy is not effectively canceled. This then is the basis for the cases cited by plaintiff. The statute is comparable with subdivision 5 of section 54 of the Workmen’s Compensation Law which provides: “No contract of insurance issued by an insurance carrier against liability arising under this chapter shall be can-celled * * * until at least ten days after a notice of cancellation of such contract # * * shall be filed in the office of the chairman ”. (See Matter of Otterbein v. Barbor & Comeau Co., 272 N. Y. 149.)
In the ease at bar there was no premium financing agreement and therefore the controlling statute at the time of the accident was section 93-c of the Vehicle and Traffic Law (now § 313) which provides that no contract of insurance shall be terminated where the cancellation is for nonpayment of the premium unless 10 days’ notice of cancellation is given to the insured. No provision appears as in section 576 of the Banking Law requiring an additional three days for mailing. Plaintiff’s reliance on section 164 of the Civil Practice Act (now CPLR 2103, subd. [b], par. 2) is without foundation. This clearly applies only to service of papers in a litigation. Plaintiff’s claim that the court in Johnson v. General Mut. Ins. Co. (supra), stated the contrary is erroneous. In Kyer v. General Cas Co. of Amer. (14 A D 2d 649), the carrier mailed the notice of cancellation to the insured on July 10, 1957. The court with respect thereto stated: “Thus the defendant’s coverage of the vehicle was ended 10 days later on July 20, 1957. ’ ’
Section 93-c of the Vehicle and Traffic Law also provided “ Upon the termination of insurance by cancellation * * * notice of such cancellation # * shall be filed by the insurer with the commissioner not later than thirty days following the effective date of such cancellation ’ ’. It is to be noted that this provision is not prefaced by a statement comparable to those in the Banking Law and Workmen’s Compensation Law to the effect that the cancellation shall not be effective unless the notice were filed as provided for in the statute. It has been held that a cancellation is not affected by the failure of the carrier to file notice thereof with the Commissioner of Motor Vehicles. The principal decisions construing this statute are Kyer v. General Cas. Co. of Amer. (14 A D 2d 649, *701 supra) and Murry v. Allstate Ins. Co. (16 A D 2d 958 [2d Dept.]). Both of these decisions explicitly hold that the termination of insurance is unaffected by the failure of a carrier to file the notice of cancellation with the Commissioner of Motor Vehicles within 30 days after the effective date of cancellation as required by the Vehicle and Traffic Law. This court, too, in Todd v. National Grange Mut. Ins. Co. (supra), which involved a cancellation of a policy where there had been a premium financing agreement, wrote: ‘ ‘ The cases cited by defendant Grange, of Kyer v. General Casualty (14 A D 2d 649) and Murry v. Allstate (16 A D 2d 958) are inapposite. Neither of these cases involved a cancellation pursuant to a purported power of attorney contained in a premium financing agreement.” Perforce of the doctrine of stare decisis the court is constrained to conclude that defendant in this action effectively canceled the policy of its insured, Weathesgy, prior to the accident. This holding however demonstrates that there is a gap in the concept to effectuate the public policy scheme of protection of innocent victims of motor vehicle accidents as envisioned by the Financial Security Act (Vehicle and Traffic Law, art. 6), the Safety Responsibility Act (Vehicle and Traffic Law, art. 7) and the Motor Vehicle Accident Indemnification Corporation Law (Insurance Law, art. 17-A). If, as occurred in the case at bar, no notice of cancellation is ever filed with the Commissioner of Motor Vehicles, an uninsured vehicle may continue to travel the highways of the State free to inflict injuries on others who have no means available to recover compensation. An inquiry addressed to the Department of Motor Vehicles would indicate that coverage was extant.. The injured person is lulled into a false sense of security and fails to file a notice of claim with MVAIC within the 90-day period limited by subdivision (a) of section 608 of the Insurance Law and is precluded from prosecuting the claim. Such was the holding of a divided Court of Appeals in a proceeding brought by the plaintiff in this action against MVAIC (Jones v. MVAIC, 19 N Y 2d 132, 135-136) where, in reversing the Appellate Division’s affirmance of an order directing MVAIC to accept the filing of a notice of claim by plaintiff, the court stated:
“It is his [plaintiff’s counsel] contention that it was impossible for his client to have complied with the provisions of subdivision (a) of section 608 since he did not learn nor could he have learned that Weathesgy was uninsured until long after the 90-day period.
“ The argument advanced by the petitioner is a very appealing one. The rejection of a claim made by a person injured by *702 an uninsured motor vehicle clearly runs counter to the general policy pervading the statute creating the Motor Vehicle Accident Indemnification Corporation. The Legislature, in creating the corporation, however, prescribed clearly the procedure to be followed in making a claim. With this procedure the petitioner has admittedly failed to comply. While compliance was difficult, if not impossible, courts are powerless to engraft judicial exceptions to periods of limitation prescribed by the Legislature.
“ In view of the number of cases which appear to have involved problems similar to that in the case at bar, the Legislature may very well consider an amendment to the statute which would permit a claim to be filed in a case of this kind. Until that is done, courts must apply the statute as it is written.”
Clearly, the situation cries out for remedial legislation which does not appear to have been heeded since the condition was delineated by the language of the Court of Appeals above quoted. The fact that the owners and operators of uninsured vehicles are subject to penal sanctions is no solace to persons injured by their negligence.
Section 313 of the Vehicle and Traffic Law should be amended so as to follow a pattern similar to'that prescribed by section 576 of the Banking Law to preclude an effective cancellation unless notice thereof is given to the Commissioner of Motor Vehicles within the 30-day period. The urgency therefor is accentuated by the fact that it takes the Department of Motor Vehicles about six weeks to supply the information as to who the carrier is when that information is sought.
Plaintiff also contends that defendant is estopped from disclaiming liability, due to the events subsequent to the default by Weathesgy after service of process on him on August 29, 1961. Prom the record before the court it appears that plaintiff’s counsel first wrote to the Department of Motor Vehicles on October 27, 1961, some five months after the accident, to determine who the carrier was. At the end of December or the early part of January, 1962 plaintiff’s counsel was advised that defendant was the insurer. On January 3, 1962 he wrote to defendant enclosing a copy of the summons and complaint and of the affidavit of service on Weathesgy and requested that defendant investigate its records to determine the reason for the delay in answering. He thereafter received a form letter from defendant advising him that defendant was investigating the case and would discuss it with him upon completion of the investigation; that a physician had been assigned to examine plaintiff, and that ‘ ‘ You may desire to refrain from instituting *703 suit until we have had an opportunity to discuss the case with you. Suits are expensive to all parties. It is our intention and desire to adjust legitimate claims on an equitable basis without delay. Your cooperation toward this end should result in an elimination of expense to both of us.” Thereafter, on January 22, 1962, February 16, 1962, March 9, 1962 and April 27,1962, plaintiff’s counsel received postcards from an appraiser retained by defendant requesting permission to examine plaintiff’s vehicle (when in fact plaintiff was a. pedestrian when injured). On February 14, 1962 defendant sent the papers it had received from plaintiff’s attorney together with a letter to Weathesgy, a copy of which was mailed to plaintiff’s counsel. The letter advised Wethersgy that since the policy had been canceled on April 11, 1961 no coverage was afforded for the accident in which plaintiff was injured on May 30, 1961. Plaintiff claims that defendant is estopped from asserting a disclaimer since he was prejudiced by defendant’s correspondence with him. Manifestly, there is no merit to this contention. Plaintiff did not inquire as to coverage from the Motor Vehicle Department or communicate with defendant until long after the 90-day period for filing a claim with MVAIC had expired. As stated in New York Jurisprudence (vol. 31, § 1515): “ estoppel * * * is a doctrine of equitable origin that imposes a result regardless of intent and sometimes in defiance of it. It is invoked when a person has been misled to his prejudice by conduct of another which would reasonably induce the former to change his position to his detriment.”
Nor is there a situation here comparable to one where an insurer by its conduct, waives a breach of a condition, for example, such as timely notice. A waiver may not be inferred so as to impose coverage where none exists. (Appleman, Insurance Law and Practice, § 9090.)
Moreover, defendant did not appear in the action but explicitly wrote that it would discuss the matter with plaintiff’s counsel after it completed its investigation. One of the facets of this investigation was its endeavor to determine whether there was coverage.
Defendant is entitled to judgment dismissing the complaint, without costs.